## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN, MARVIN | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| | ) | Case No. |
| HUB GROUP, INC.; and MALTHY, | ) | Judge |
| DONALD, President. | ) | |
| **Defendant.** | ) | |

### COMPLAINT

NOW COMES MARVIN ALLEN, by and through his undersigned attorney, SIVONNIA DEBARROS of the SL DEBARROS LAW FIRM, LLC, and complains of HUB GROUP, INC. stating:

### JURISDICTION and VENUE

1. Plaintiff MARVIN ALLEN is a citizen of the United States of America, and, for the relevant time, was a citizen and resident of Chicago, Illinois.

2. Defendant HUB GROUP, INC. ("Defendant") is an operating is a transportation management company in North America, providing intermodal, truck brokerage and logistics services with offices in Oak Brook, Illinois.

3. The matters complained of in this Complaint occurred in the course of Plaintiff's employment by Defendant, in the State of Illinois.

4. Defendant, on or about February 14, 2015 to April 2, 2019, was an employer as defined in 42 U.S.C. § 2000(e); the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*; and the Equal Pay Act ("EPA"), 820 ILCS 112 *et seq.*

5. This action is brought under 28 U.S.C. § 1331; 28 U.S.C. § 1343; 42 U.S.C. § 1988; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* the IWPCA, 820 ILCS 115/1, *et seq.*, the EPA, 820 ILCS 112 *et seq;* and Illinois common law.

**GENERAL FACTUAL ALLEGATIONS**

6. Plaintiff, on or about February 14, 2015 to April 2, 2019, was an employee of Defendant.

7. Plaintiff is African American and a known Gay man.

8. Plaintiff was hired on February 14, 2015 which he held a position of Account Manager until April 2019.

9. Throughout the time that Plaintiff was employed by Defendant, he received written work evaluations and was regularly commended on his work ethic and performance by being given additional duties and responsibilities.

10. Throughout the Plaintiff's employment, he enjoyed a spotless record until Brian Lue became his supervisor/Director.

11. Not only was he subjected to false statements in his evaluations that eventually were changed, he endured direct lies from his superior Brian Lue.

12. Throughout the time that Plaintiff was supervised by Brian Lue, Plaintiff was subjected to adverse employment actions to which similarly situated, non-African American employees were not subjected.

13. Ostensibly, pursuant to Defendant's progressive discipline policy, Plaintiff was written up for conduct that similarly situated, non-African American employees engaged in without being disciplined.

14. Throughout the time that Plaintiff was supervised by Brian Lue, Plaintiff asserted multiple written and verbal complaints of racial and sexual orientation discrimination against Defendant in the workplace, which included the filing of formal grievances.

15. None of the conduct for which Plaintiff was disciplined was investigated by Defendant; in fact, any grievances made against his non-African American were not investigated by Defendant and overlooked.

16. Defendant failed to investigate Plaintiff's allegations and concerns of race and sexual orientation discrimination.

17. Defendant did absolutely nothing to discipline discrimination in its workplace against Plaintiff or others who complained in the past or prevent future discrimination.

18. In fact, Brian Lue also promoted a Caucasian male employee to a management role over Plaintiff after he stood up in the workplace and told Plaintiff to "shut the fuck up!" adding to the discriminatory and hostile culture of Defendant.

19. In January 2017, Plaintiff filed an EEOC complaint, see attached and incorporated as **Exhibit A**.

20. Instead of trying to amicably settle issues, Defendant continued to harass and discriminate against Plaintiff by overworking him by giving him job duties that were not in his job description and which were duties of other employee members on the team.

21. Defendant continued to retaliate against Plaintiff by taking numerous adverse employment actions against him including preventing him from being promoted although he had trained many non-African Americans with less experience and less tenure.

22. Defendant continued to engage in retaliation and creating a hostile work environment by making false claims in Plaintiff's evaluations which eventually prevented him from obtaining promotions to which he was qualified and then correcting the evaluations after the time to obtain such position had expired.

23. Plaintiff was never provided a legitimate reason for being made to engage in job duties that were the duties of a higher position he applied for and was given, or for any other adverse employment actions taken against him by Defendant.

24. On April 2, 2019, Plaintiff was terminated.

25. Plaintiff filed a second EEOC charge, attached and incorporated herein as Plaintiff's **Exhibit B**.

26. Plaintiff's termination is a violation of his civil rights.

27. The reason provided by Defendant for his termination was a pretext.

28. Plaintiff know that Caucasian individuals who were hired after his hiring date, were employed and retained by Defendant as Senior Account Managers, Managers of Account Management and Directors, performing substantially the same work as Plaintiff in his Account Manager role and making approximately $70,000.00 to $90,000.00 (on belief and information) annually, three to five times the amount formerly paid to Plaintiff.

29. Plaintiff had more seniority than the Caucasian employees who were retained and promoted over him with less experience and tenure.

30. Plaintiff was never provided a legitimate reason for disparities in wages.

31. On different occasions, the Defendant also failed to pay timely overtime wages and has never paid Plaintiff for the time that he went unpaid.

32. Similarly situated, non-African-American employees and similarly situated employees who had not engaged in protected activities were not treated the same way as Plaintiff.

33. As a result of Defendant's discriminatory conduct, Plaintiff has lost substantial earnings and other job-related benefits.

34. Plaintiff has also suffered severe emotional distress, embarrassment and humiliation.

35. On July 31, 2019, the IDHR issued a Notice that it was closing Plaintiff's EEOC case and that Plaintiff had a right to sue within 90 days of its letter. Pl's **Exhibit D**.

### COUNT I – RACIAL DISCRIMINATION IN EMPLOMENT

36. Plaintiff restates and realleges paragraphs 1-35 as if stated here in full as paragraphs 1-35 of Count I.

4

37. These actions were taken against Plaintiff due to his race, in violation of the Civil Rights Act of 1946.

## COUNT II – SEXUAL ORIENTATION DISCRIMINATION IN EMPLOYMENT

38. Plaintiff restates and realleges paragraphs 1-35 as if stated here in full as paragraphs 1-35 of Count II.

39. Plaintiff is an openly homosexual man and African American.

40. Plaintiff has been subjected to hostile work environments and false accusations due to his sexual orientation.

41. Plaintiff, unlike Caucasian employees, are scrutinized and subjected to discriminatory policies created by Defendant's discriminatory and hostile culture.

42. On December 2018, Plaintiff specifically informed his Director, Brian Lue, that he was tired of being subjected to unfair and discriminatory treatment simply because he was gay.

## COUNT III – HOSTILE WORK ENVIRONMENT

43. Plaintiff restates and realleges paragraphs 1-42 as if stated here in full as paragraphs 1-42 of Count III.

44. At all times stated herein, Plaintiff was subjected to unwelcome harassment by his Caucasian co-workers and managerial staff.

45. Types of unwelcomed harassment Plaintiff endured was changing policies in the workplace where other Caucasian employees did not have to abide by, being yelled at and cursed out at work and then promoting the same individual to a managerial role, being made fun of for his "tone" by his Director because of his sexual orientation, being yelled at and demanded to complete an one-hour long exam in only fifteen (15) minutes when other Caucasian employees were not ordered to do the same, *inter alia*.

46. The harassment that Plaintiff received is based on his race – African American – and

5

because of his sexual orientation.

47. The harassment was so severe that Plaintiff endured medical issues, whereby he fainted at work, has been under the doctor's care for anxiety-related issue and it created an issue of anxiety and decreased concentration and focus issue.

48. Defendant is liable for the severe hostile environment it created which was also permeated with discriminatory intimidation, ridicule, and insult; and one which fostered and created abusive relationships.

### COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiff restates and realleges paragraphs 1-48 as if stated here in full as paragraphs 1-48 of Count IV.

50. Defendant's intentionally engaged in extreme and outrageous behavior in the workplace against Plaintiff because of his race and sexual orientation.

51. Plaintiff endured extreme emotional distress for Defendant's actions to which he became under physician's care for treatment.

52. The above-described discrimination created a hostile, intimidating and uncomfortable work environment which, eventually, substantially interfered with Plaintiff's ability to concentrate and perform his job duties.

53. Such conduct engaged in, promoted and created by the Defendant resulted in Plaintiff's emotional damages to which he deserves compensation.

### COUNT V – ILLINOIS WAGE PAYMENT AND COLLECTION ACT ("IWPC")

54. Plaintiff restates and realleges paragraphs 1-42 as if stated here in full as paragraphs 1-42 of Count V.

55. At any and all times relevant hereto, at the Defendant's request, Plaintiff performed services for Defendant which sometimes resulted in overtime work.

6

56. Plaintiff's final compensation at time of termination did not include the penalty payment for the time that Plaintiff went without being properly compensated – on time – for his overtime work.

57. These actions were taken against Plaintiff in violation of the IWCPA, and Plaintiff has been damaged as consequence of those lost wages and benefits for the periods that overtime wages were unpaid.

## COUNT VI – ILLINOIS EQUAL PAY ACT ("EPA")

58. Plaintiff restates and realleges paragraphs 1-48 as stated fully herein as paragraphs 1-48 of Count VI.

59. Pursuant to 820 ILCS *112 et. seq*, Plaintiff endured unfair and discriminatory pay whereby he was underpaid for the work that he performed during this tenure with the Defendant.

60. Specifically, the Defendant paid employees who were Caucasian different wages by promoting them to positions that Plaintiff was qualified for and to which Plaintiff engaged in such position by performing duties the Defendant demanded he do.

61. Caucasian employees were also paid more for engaging in substantially the same work as Plaintiff, in jobs that required substantially the same skill, effort and responsibility; and which are performed under similar working conditions.

62. Defendant violated the EPA by denying Plaintiff a fair wage for performing the duties of a higher paying position and claiming that the position he was hired for included duties such as training. See Plaintiff's **Exhibit C** attached, Job Descriptions.

63. The Defendant acted with malice or reckless indifference to its unfairness regarding Plaintiff's wage.

64. Plaintiff has been damaged and is entitled to fair compensation, punitive damages, special damages and a civil penalty against the Defendant.

## COUNT VI - RETALIATION

65. Plaintiff restates and realleges paragraphs 1-64 as if stated here in full as paragraphs 1-64 of Count VII.

66. All of the above-described actions were taken against Plaintiff because he is African-American and Gay, and because he had engaged in the protected activity of complaining of discrimination, unequal terms and conditions of employment, and unequal pay and benefits in the workplace.

67. In March 2019, Defendant further retaliated against the Plaintiff after he presented a physician's note that he needed to be absent for medical reasons. Days after that physician's letter, Plaintiff was terminated.

68. The above-described discrimination and retaliation created a hostile, intimidating and uncomfortable work environment which, eventually, substantially interfered with Plaintiff's ability to perform his job.

**WHEREFORE**, Plaintiff prays judgment be entered against Defendant and that he be granted the following relief:

a) All back wages and benefits from the date of violations under the IWPCA and EPA.

b) Reasonable Emotional damages in excess of $50,000.00.

c) Liquidated compensatory damages in a sum in excess of $50,000.00.

d) Special Damages in a sum in excess of $50,000.00

e) Punitive damages.

f) Civil Penalties based on statute.

g) Pre-judgment and post-judgment interest.

h) Costs of such, including reasonable attorney's fees.

i) Such further relief as this Court deems appropriate.

Plaintiff demands trial by jury.


/s/ Sivonnia DeBarros
Attorney for Plaintiff


ARDC #6312637
Sivonnia DeBarros
720 S Eastwood Dr, 298
Woodstock, IL 60098
Tel: (708) 234-7298
Fax: (708) 843-5846
sdebarros@sldebarros.com